**U.S. DISTRICT COURT**

**IN THE WESTERN DISTRICT OF MICHIGAN**

ANGEL ILAGAN,

    Plaintiff,

v.

SHEFIT OPERATING CO. LLC,
*a domestic limited liability company,*
ROBERT MOYLAN, *an individual*
SARA MOYLAN*, an individual*,

    Defendants.

Case No.   1:22-cv-1013

Hon.

---

Sarah S. Prescott (P70510)
SALVATORE PRESCOTT PORTER
& PORTER
Attorney for Plaintiff
105 E. Main Street
Northville, Michigan 48167
(248) 679-8711
prescott@sppplaw.com

---

**COMPLAINT AND JURY DEMAND**

Plaintiff Angel Ilagan, by and through his attorneys, SALVATORE PRESCOTT PORTER & PORTER, submits this Complaint and states as follows:

**PARTIES, JURISDICTION AND VENUE**

1. Plaintiff Angel Ilagan is a resident of Newburgh, Indiana.

2. Defendant SHEFIT Operating Co. LLC (hereafter at times referred to as SHEFIT) is a limited liability company whose majority owners reside in Michigan and the entity is headquartered in Hudsonville, Michigan in Ottawa County. The remaining, minority owner resides in the State of New York, on information and belief.

1

3. Defendant Robert Moylan, part owner of SHEFIT Operating Co. LLC is, on information and belief, a resident of Ottawa County, Michigan.

4. Defendant Sara Moylan, part owner of SHEFIT Operating Co. LLC is, on information and belief, a resident of Ottawa County, Michigan.

5. The alleged violations forming the basis of this action occurred in Ottawa County, Michigan, where the Plaintiff worked and Defendant's key decisions at issue were operationalized.

6. The Claims in this action are for breach of contract (as to Defendant SHEFIT Operating Co. LLC), and for violation of Michigan's Whistleblower Protect Act, MCL § 15.361 et seq.

7. The amount in controversy significantly exceeds $75,000, the jurisdictional requirement for diversity jurisdiction, involving substantially more in lost pay and benefits and equity ownership of a business enterprise. All Defendants are diverse from Plaintiff.

8. This Court therefore has diversity subject matter jurisdiction arising under 28 U.S.C. § 1332, and venue lies in this Court pursuant to 28 U.S.C. § 1391(b)(1) and (2).

## **GENERAL ALLEGATIONS**

9. Starting on or around August 16, 2021, Defendants (led and by and through Defendant Robert Moylan) engaged Plaintiff in a negotiation to become the Chief Executive Officer of Defendant SHEFIT.

10. Plaintiff began working for Defendants as SHEFIT's Chief Executive Officer.

11. Negotiations on the terms of the employment continued into October 2021, even as Plaintiff rendered performance.

12. At a face-to-face meeting, on or about October 19, 2021, the parties verbally finalized and agreed to the material terms of the employment.

13. Defendant Robert Moylan agreed on behalf of Defendants, and Plaintiff agreed on his own behalf.

14. A human resources staffer edited a document reflecting the terms and passed it out to the participants. The resulting term sheet (with a September date that was not correctly updated) was distributed as the parties broke from the finalized negotiation on October 19, and that term sheet is attached as **Exhibit A**, Terms of Employment Agreement.

15. Mr. Patrick Van Tuinen, SHEFIT's Vice President of Finance, was present in the parties' final meeting, when the final terms were verbally agreed upon, and he uploaded the resulting term sheet, **Exhibit A**, to the SHIEFIT internal system.

16. It became part of Plaintiff's formal personnel file as well.

17. The parties operated pursuant to the Agreement at all times prior to the events in controversy here.

18. Among other things, Defendants paid Plaintiff his salary in the form of bi-weekly installments of $17,307.69, as specified in the Agreement.

19. Likewise, Defendants paid Plaintiff a moving allowance, also as memorialized in their Agreement.

20. The company further documented in SHEFIT's system the one-hundred sixty hours (4 weeks) of paid time off (PTO) which had been agreed and then written by both parties pursuant to their meeting of the minds.

21. In addition to these agreements, the parties agreed that, upon any termination Plaintiff would be paid 18 months of severance and 1.5% of Company ownership. Their agreement states:

**Severance:** If your employment with the Company is terminated by the Company, 18 months of severance at base pay will be given, along with the vesting of an additional one percent (1%).

22. Further, the parties agreed on a vesting schedule of ownership in the entity. Their agreement states:

**Time Served Component (Total 2.5% Equity):**   August 31, 2022    Vest/Earn ½ of 1% equity…

23. The parties agreed and understood that they had a binding contract, and that legal counsel may conform a subsequent writing to the existing agreed-upon terms (which were binding).

24. In the end, they did not pursue any further writing as months rolled on.

25. However, in recent months, Defendants began seeking opportunities to sell the entity Defendant, SHEFIT.

26. Upon information and belief, Defendants began to reconsider their promises to Plaintiff as the sale of the company loomed, motivated by the desire to cut Plaintiff out of his equity stake.

27. Defendants therefore "offered" Plaintiff a new deal, to replace their existing agreement.

28. Plaintiff did not agree to renegotiate his employment terms and he rejected Defendants' proposal to do so.

### Whistleblower Protection Act Violation

29. Cognizant that Defendants were being threatened with suit by a minority shareholder named Jeffrey Aronsson for failure to recognize and distribute profits according to

ownership, Plaintiff closely monitored costs and accounting within SHEFIT.

30. In the course of reviewing financial information closely, Plaintiff identified stark evidence of tax evasion by the Defendants.

31. Specifically, Plaintiff observed that Defendants were overstating business expenses by characterizing personal expenses as those of the business. Examples included characterizing lavish personal vacations as meetings of the Board of Directors with no documentation that a meeting had occurred and listing various personal expenses from 2020 and 2021 as debt to SHEFIT to avoid having to declare taxable income.

32. Twice during the week that preceded his termination, Plaintiff discussed with an officer of the company that Defendants Robert and Sara Moylan were committing widespread tax evasion that must be reported to the Internal Revenue Service.

33. Plaintiff informed an officer of the company days prior to his termination that because he was aware of this illegal activity, he was obligated to report it to the Internal Revenue Service, and that as a former Certified Public Accountant he would be doing so imminently.

34. Plaintiff likewise informed the officer of the nature of the records and facts he had been gathering to imminently make his report.

35. The knowledge of an officer of the company of Plaintiff's protected acts is imputed to the entity.

36. The Defendants—specifically the entity Defendant acting by and through and as ratified and determined specifically by both individual Defendants—terminated Plaintiff upon learning of his intentions, because of this protected activity, on or about September 7, 2022.

37. On information and belief, this was done over the objection of the officer to whom Plaintiff had reported and was the decision of the named Defendants. The named individual

Defendants made hiring and firing decisions at Plaintiff's level, as the owners of SHEFIT.

## SHEFIT Breaches Plaintiff's Contract

38. Promptly following his termination, Plaintiff demanded performance on his contract in the form of the negotiated severance.

39. Because Plaintiff was terminated on September 7, 2022, his equity had vested. Therefore, Plaintiff was contractually entitled to equity totaling 1.5% (0.5 points for one year served and 1 point as part of the severance).

40. Despite the obligation to pay, Defendants—specifically the entity Defendant acting by and through and as ratified and determined specifically by both individual Defendants—refused to pay the severance or to memorialize the equity stake owed to Plaintiff.

41. These acts amount to material breach.

42. Despite breaching their agreement with Plaintiff, Defendants jointly caused a letter to be mailed to Plaintiff on or around September 14, 2022, demanding that Plaintiff cease alleged violations of the "Company's confidentiality provisions."

43. The relevant provision on which SHEFIT's letter relies is contained within Exhibit A, the parties' binding (but breached) Terms of Employment Agreement.

44. In short, Defendants jointly have continued to recognize Exhibit A as a memorialization of their mutual and binding agreement with Plaintiff, while also refusing to pay him under it.

## COUNT I
## BREACH OF CONTRACT
## Against Defendant SHEFIT

45. Plaintiff hereby incorporates all preceding paragraphs.

46. Plaintiff and Defendants—specifically the entity acting by and through and as

ratified and determined specifically by both individual named Defendants—mutually agreed to the final material terms of Plaintiff's employment on or around October 19, 2021.

47. The parties orally agreed, expressing words of assent directly reflecting a meeting of the minds after negotiation, including by and through Plaintiff and Defendant Robert Moylan.

48. Their oral agreement is a binding contract based on mutual consideration.

49. The parties further memorialized their agreement in Exhibit A, an express written contract upon which all parties relied thereafter.

50. The parties' agreement included a promise of severance after termination and assignment of equity ownership of SHEFIT.

51. Defendant SHEFIT, acting by and through and as ratified and determined specifically by both individual named Defendants, breached the verbal and/or written express agreement by failing and refusing to pay Plaintiff the severance or equity to which he is contractually entitled, including upon a demand for cure.

52. As a result of Defendant's breach, Plaintiff has been damaged in the amount contemplated by the parties' Agreement.

## COUNT II
## WHISTLEBLOWER PROTECTION ACT
### Against All Defendants

53. Plaintiff hereby incorporates all preceding paragraphs.

54. Plaintiff was an employee of Defendants within the meaning of Michigan's Whistleblower Protection Act.

55. Defendants were employers within the meaning of Michigan's Whistleblower Protection Act, per MCL § 15.361 et seq.

56. On or about September 7, 2022, Plaintiff was preparing and imminently en route to

report Defendants' illegal conduct—tax evasion—to the Internal Revenue Service. This amounts to protected activity under Michigan's Whistleblower Protection Act.

57. Defendants, specifically the entity acting by and through and as ratified and determined specifically by both individual named Defendants, learned by and through disclosure to an officer of the entity that Plaintiff intended to report their illegal conduct to the IRS.

58. Defendants—specifically, the entity acting by and through and as ratified and determined specifically by both individual Defendants—terminated Plaintiff by issuing him a termination notice. They did so because he was about to report them to the IRS.

59. As a direct and proximate result of the Defendants' wrongdoing, Plaintiff has suffered loss of employment, loss of salary and benefits, loss of earning potential, and other damages to be proved at trial.

## **RELIEF REQUESTED**

WHEREFORE, Plaintiff requests that the Court enter judgment against Defendants as follows:

LEGAL RELIEF:

A. Judgment for the value of lost wages, bonus, and benefits, past and future in whatever amount Plaintiff is found to be entitled;

B. Judgment in the amount of $900,000, representing 18 months of unpaid severance pay including bonus owed; together with 1.5% equity in the entity Defendant and unpaid paid-time-off pay;

C. A declaratory judgment that Plaintiff is 1.5% owner of the entity Defendant, together with whatever equitable or injunctive relief is necessary to properly register this ownership stake;

D. An award of costs, interest and reasonable attorney's fees;

Such equitable relief as the Court deems just.

          Respectfully Submitted,

          <u>/s/ Sarah S. Prescott</u>
          Sarah Prescott (P70510)
          SALVATORE PRESCOTT PORTER
          & PORTER
          Attorneys for Plaintiff
          105 E. Main Street
          Northville, Michigan 48167
          (248) 679-8711
          prescott@spplaw.com

Dated: October 31, 2022

## **JURY DEMAND**

Plaintiff demands a trial by jury in the above-captioned matter.

Respectfully Submitted,

/s/ Sarah S. Prescott
Sarah Prescott (P70510)
SALVATORE PRESCOTT PORTER
& PORTER
Attorney for Plaintiff
105 E. Main Street
Northville, Michigan 48167
(248) 679-8711
prescott@spplaw.com

Dated: October 31, 2022